# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

─────────────────

№ 07-CV-00988 (JFB) (AKT)

─────────────────

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

and

CYNTHIA LAFOND AND FRANCESCA CICCIARI,

Intervenor-Plaintiffs,

VERSUS

THOMAS DODGE CORP. OF N.Y. D/B/A THOMAS DODGE SUBARU, ET AL.,

Defendants.

─────────────────

**MEMORANDUM AND ORDER**
March 25, 2009

─────────────────

JOSEPH F. BIANCO, District Judge:

Plaintiff Equal Employment Opportunity Commission ("EEOC") and intervenor-plaintiffs Cynthia Lafond ("Lafond") and Francesca Cicciari ("Cicciari") ("intervenor-plaintiffs") (collectively, "plaintiffs") bring this action for employment discrimination, alleging that Lafond and Cicciari, as well as Barbara Denninger ("Denninger"), were subjected to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The intervenor-plaintiffs assert parallel state law claims for hostile work environment under the New York State Human Rights Law, Executive Law § 290 *et seq.* ("NYSHRL"), as well as claims for retaliation, pursuant to Title VII and the NYSHRL. In addition, the EEOC asserts a separate Title VII cause of action for retaliation on behalf of Denninger, alleging that she was terminated for complaining about the alleged sexual harassment. In connection with these claims, the EEOC sues Thomas Dodge Corporation of New York, d/b/a Thomas Dodge Subaru, and Thomas Dodge Motor Sports, Inc. (collectively,

1

"Thomas Dodge"). Intervenor-plaintiffs further sue Thomas Mammolito (President and Owner of Thomas Dodge), Frank Cline (Service Manager), and Albert Sessa (Parts Manager) in their individual capacities pursuant to the NYSHRL, on the basis of aiding and abetting liability.

Defendants now move for summary judgment on all claims, pursuant to Fed. R. Civ. P. 56(c). For the following reasons, defendants' motion for summary judgment is denied in its entirety.

II. DISCUSSION

A. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a

discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

B. HOSTILE WORK ENVIRONMENT CLAIM

Defendants argue that they are entitled to summary judgment on the hostile work environment claim because plaintiffs have failed to proffer sufficient evidence to support such a claim. As set forth below, the Court disagrees and finds that summary judgment on the hostile work environment claim is unwarranted.[1]

---

[1] As a threshold matter, defendants argue that summary judgment should be granted dismissing all claims for monetary relief for "class members" who have declined to participate in this action and for which no individualized showing has been made. In response, the EEOC has made clear that neither its initial complaint, nor its Amended Complaint, alleges a pattern or practice violation and, thus, any contentions about a failure of proof regarding such violations is moot. Similarly, the EEOC has stated that it is seeking monetary relief only for the identified claimants — namely, Lafond, Cicciari, and Denninger. Therefore, any arguments regarding summary judgment as to claims for monetary relief by non-claimants are also moot.

1. Applicable Law

In order to prevail on a hostile work environment claim, a plaintiff must satisfy two elements: "'(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426 (2d Cir. 1999)); *accord Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003); *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000).

With respect to the first element, "[i]solated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "simple teasing . . . offhand comments, and isolated incidents (unless extremely serious)" will not amount to discriminatory changes in the "terms and conditions of employment") (internal citations and quotations omitted); *Brennan v. Met. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (holding that "[i]solated, minor acts or

occasional episodes do not warrant relief"); *Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999) (holding that "to meet his burden, the plaintiff must show more than a few isolated incidents" and "evidence solely of sporadic" discrimination does not suffice) (internal quotations omitted); *Knight v. City of N.Y.*, 303 F. Supp. 2d 485, 500 (S.D.N.Y. 2004) (denying hostile work environment claim where incidents were "too remote"); *Ruggieri*, 146 F. Supp. 2d at 217-18 (holding that a "collection of administrative mixups, minor annoyances, and perceived slights cannot be considered severe or pervasive harassment"); *Francis v. Chem. Bank. Corp.*, 62 F. Supp. 2d 948, 959 (E.D.N.Y. 1999) (dismissing hostile work environment claim where plaintiff only alleged four incidents).

Instead, the conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. N.Y.*, 366 F.3d 138, 150 (2d Cir. 2004). Other factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry*, 336 F.3d at 148 (quotation marks omitted). The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (quotations and citation marks omitted) (alteration in original).

Further, to succeed on a hostile work environment claim in the instant case, plaintiffs must link the actions by defendants to gender. Although "[f]acially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim," plaintiff nevertheless must offer some evidence from which a reasonable jury could infer that the facially-neutral incidents were in fact discriminatory. *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002); *see also Nakis v. Potter*, No. 01 Civ. 10047 (HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) (holding that "[h]ostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable" under Title VII) (citing *Brennan*, 192 F.3d at 318 ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class.")).

Moreover, as the Second Circuit has noted, "[t]he Supreme Court has ruled that employers are not automatically liable for sexual harassment perpetrated by their employees." *Petrosino v. Bell Atlantic,* 385 F.3d 210, 225 (2d Cir. 2004) (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998); *Faragher,* 524 U.S. at 775). In instances where the harassment in the form of a hostile work environment is alleged to have been committed by non-supervisory co-workers, "an employer's vicarious liability depends on the plaintiff showing that the

4

employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Petrosino,* 385 F.3d at 225. However, in instances where the alleged harassment involves a supervisory employee, the court first looks to whether the supervisor's behavior "culminate[d] in a tangible employment action" against the employee "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 765; *accord Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 57 (2d Cir. 2004). If the harassment resulted in a tangible employer action, "the employer will, *ipso facto,* be vicariously liable." *Mack v. Otis Elevator Co.,* 326 F.3d 116, 124 (2d Cir. 2003); *accord Petrosino*, 385 F.3d at 225. Moreover, even "[i]n the absence of such tangible action, an employer will still be liable for a hostile work environment created by its supervisors unless it successfully establishes as an affirmative defense that (a) it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and (b) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Petrosino,* 385 F.3d at 225 (quoting *Ellerth*, 524 U.S. at 765). A defendant may attempt to satisfy the first element by "the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not always dispositive." *Ferraro v. Kellwood Co.,* 440 F.3d 96, 102 (2d Cir. 2006). As to the second element, "proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden." *Id.* Of course, if "the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." *Whidbee*, 223 F.3d 62, 73 (2d Cir. 2000) (citation omitted).

2. Proper Time Frame for Analyzing Evidence of Harassment

As an initial matter, defendants argue that alleged incidents of sexual harassment prior to September 13, 2005 cannot be considered in determining whether there was a hostile work environment because, according to defendants, Thomas Dodge exercised reasonable care by having anti-discrimination policies in place and because plaintiffs failed to report any sexual harassment issues to Mammolito prior to that date. The Court disagrees. As set forth below, this contention by defendants is simply incorrect as a matter of law and erroneously consolidates two separate legal issues.

It is axiomatic, as the Supreme Court explained in *National Railroad Passenger Corporation v. Morgan*, that "the incidents comprising a hostile work environment are part of one unlawful employment practice," and, therefore, "the employer may be liable for all acts that are part of this single claim." 536 U.S. 101, 118 (2002). Therefore, the Court should not carve up or disaggregate these alleged incidents of harassment because such an approach "robs the incidents of their cumulative effect, and of course, when the complaints are broken into their theoretical component parts, each claim is more easily dismissed." *Jackson v. Quanex Corp.,* 191 F.3d 647, 660 (6th Cir. 1999) (internal quotations omitted); *see also Burns v. McGregor Elec. Indus., Inc.,* 955 F.2d 559, 564 (8th Cir. 1992) (a "district court should

5

not carve the work environment into a series of discrete incidents and then measure the harm occurring in each episode"). Instead, the court must look at the "totality of the circumstances" in assessing whether the hostile work environment claim survives summary judgment. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (citing *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001)).

Of course, the Court recognizes that, even if there is sufficient evidence of a hostile work environment to survive summary judgment, summary judgment may be warranted under the *Faragher/Ellerth* affirmative defense where the undisputed facts demonstrate that the defense exists and, therefore, no liability should be imputed to the employer. However, that potential defense must be considered separately from the issue of whether there was a hostile work environment in the first place. In other words, an employer is not permitted to argue that, because the employer was unaware of certain incidents of harassment, those incidents should be treated as if they did not occur in determining whether a hostile work environment existed; rather, one examines whether under the totality of the circumstances (regardless of the employer's knowledge) whether a hostile work environment existed under the first element of the claim and then, if it did, the next question is whether the employer should be immune from liability for that environment under the framework of *Faragher/Ellerth* in connection with the second element of the claim. In fact, the Second Circuit has addressed the precise legal contention being made by defendants in this case – namely, that incidents not reported to a supervisor should not be considered in determining the existence of a hostile work environment – and rejected it:

> Although the record is silent on the point, we assume that the district court declined to consider the allegations of unreported incidents of harassment precisely because they were not reported to Distasio's supervisor. However, the fact that the incidents were or were not reported is irrelevant to a determination of whether or not a hostile environment existed – the first element of plaintiff's claim. While a fact-finder at trial is free to make credibility determinations and may therefore disregard these unreported incidents, at the summary judgment stage the district court must assume that all of plaintiff's allegations pertaining to the issue of a hostile work environment are true and give them no less weight than reported incidents. Thus, unreported incidents of harassment alleged by the plaintiff regarding the issue of hostile work environment, whether or not an explanation for the failure to report is proffered, stand on the same footing as reported incidents; both must be taken as true at the summary judgment stage.

*DiStasio v. Perkin Elmer Corp.,* 157 F.3d 55, 62-63 (2d Cir. 1998). The Court then noted that, although the employer cited a number of cases for the proposition that unreported instances of harassment should not be considered in determining the pervasiveness of hostility in the workplace,

> these cases suggest only that the fact that a sexual harassment complaint is

unreported may be relevant in considering whether an employer knew of the alleged conduct. Further, . . . the fact that incidents were not reported will not automatically shield an employer from Title VII liability.

*Id.* at 63. Thus, the Second Circuit considered both the reported incidents and the "plainly relevant" unreported incidents in determining whether summary judgment was appropriate on the issue of whether there was a hostile work environment and found no reasonable basis for the district court's decision to grant summary judgment to defendant given that evidence. *Id.*

Therefore, in the instant case, the Court will separately examine whether (1) a rational jury could conclude the existence of a hostile work environment based on all the evidence, including pre-September 13, 2005 incidents, and (2) if so, whether defendants are in any event entitled to summary judgment on such claim because they have established as a matter of law that they have a *Faragher/Ellerth* defense to the alleged harassment and, thus, cannot be held liable.

a. Evidence of Work Environment

As summarized below, plaintiffs have set forth evidence of a substantial pattern of verbal and physical harassment at Thomas Dodge that spanned several years, which clearly raises genuine issues of fact as to whether the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive as to alter the conditions of their work environment.

First, plaintiffs Lafond and Cicciari have both set forth evidence that they were subject to sexual harassment on a regular basis by Sessa. First, with respect to plaintiff Lafond, there is evidence that, beginning in March 1998 and continuing throughout her entire length of employment, Sessa routinely subjected her to unwelcome verbal and physical sexual harassment. (Pl.'s 56.1 ¶¶ 348-52, 356-57, 361-62, 366-70, 372-75, 377-83, 416, 438, 443-44.) Specifically, Lafond has provided sworn statements in which she details numerous instances in which Sessa made sexual comments to her concerning her appearance, vulgar references to male and female bodies, portrayals of sexual acts, comments about her genital area and about having sex with her, and propositions for sex acts. Lafond also has provided evidence that Sessa repeatedly touched her or attempted to touch her on multiple occasions during her employment at Thomas Dodge, including her hair, arms, knees, pant pockets and, on September 13, 2005, her breasts. Similarly, Cicciari has provided sworn statements that, from October 2001 until Cicciari stopped working at Thomas Dodge in September 2005, Sessa repeatedly subjected Cicciari to sexual comments concerning her appearance, vulgar references to male and female bodies and sexual organs, pornography, portrayals of sexual acts, touching of her hair and back, and his rubbing up against her. (Pl.'s 56.1 ¶¶ 387-94, 398-416.) In addition to this evidence of harassment by Sessa, plaintiffs also have provided evidence that, from 2003 and continuing to the end of their employment, Lafond and Cicciari were called "b****" or "b****es" on a daily basis. (Pl.'s 56.1 ¶¶ 326, 328, 331-32, 338, 343, 345.) According to plaintiffs, they repeatedly told him to stop making such references, but he refused and, on at least one occasion, allegedly said to Cicciari, "I'll fire you, ya

b****" when she complained. (Pl.'s 56.1 ¶¶ 334-36, 340-44.)

With respect to Denninger, there is also evidence that, from shortly after the beginning of her employment and throughout her almost two months of working for Thomas Dodge, another salesperson, Gabriel Rodriguez, repeatedly and continuously subjected Denninger to cursing and derogatory gender-based epithets, which are outlined in the plaintiffs' 56.1 Statement. (Pl.'s 56.1 ¶¶ 545-46, 549, 569.) Denninger asserts that the constant abuse interfered with her job as it made her uncomfortable to work at Thomas Dodge and caused her stress, nightmares, and flashbacks. (Pl.'s 56.1 ¶¶ 548-49, 577.) Denninger further claims that when she took the complaints to Mammolito, he called her derogatory epithets, and with his arm around Rodriguez said, "these b****es, they go away, they fade away and I promise you she won't be around for long." (Pl.'s 56.1 ¶ 308.) Denninger also testified that, in addition to the alleged harassment by Rodriguez, she was subjected to harassment in the Service Department where Lafond and Cicciari were employed. (Pl.'s 56.1 ¶¶ 550-52).

Denninger also stated that the Suzuki Sales Manager told her that he did not want her or any other woman selling Suzuki products and denied her assistance with selling Suzuki, which Denninger claims affected her ability to do her job. (Pl.'s 56.1 ¶¶ 533-37.) Although defendants argue that this incident should not be considered because it was facially neutral in that the Sales Manager did not want anyone, male or female, selling the products other than him, the Court is unable to conclude as a matter of law that this incident is not attributable to gender. Although it may not be the only inference that can be drawn from these facts, a jury could reasonably infer, especially if the jury credits Denninger's testimony about the Sales Manager's statement regarding gender, that denying Denninger the opportunity to sell Suzuki products was related to gender.[2]

Plaintiffs also set forth evidence that Mammolito made offensive gender-based comments in response to their complaints. For example, after speaking with Cicciari about her and Lafond's complaints regarding Sessa, Mammolito allegedly met with Lafond and told her "women can be too sensitive" in response to Lafond's complaint about Sessa putting his head in her breasts. (Pl.'s 56.1 ¶¶ 441.)[3]

---

[2] The Court notes that, even apart from this alleged incident, there is sufficient evidence of a hostile work environment, based upon the disputed evidence regarding the alleged consistent use of gender-based epithets and other harassing conduct, to defeat defendants' summary judgment motion and warrant a trial.

[3] Plaintiffs also submit evidence that Mammolito asked Frank Frazzita (Service Manager) whether he was "tapping" Lafond and asked whether she "was any good." (Pl.'s 56.1 ¶¶ 354, 355.) This is based on Lafond's testimony, and the Court recognizes that inadmissible hearsay is generally not to be considered on a motion for summary judgment. *See Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). However, the record is replete with incidents of sexual harassment that may form the basis of a hostile work environment claim and, regardless of Mammolito's personal use of gender-based epithets or harassing statements, there is a genuine issue of material fact as to whether Mammolito's behavior contributed to or condoned Sessa's and/or Cline's

In sum, after carefully reviewing the record and drawing all reasonable inferences in plaintiffs' favor, the Court concludes that sufficient evidence exists to raise an issue of material fact regarding the first prong of the hostile work environment claim – namely, the existence of a hostile work environment. Plaintiffs have proffered evidence of a pattern of gender-based epithets, physical harassment, and treatment regarding their work that a jury could reasonably infer was attributable to gender and created a hostile work environment. Although defendants argue that any alleged comments and incidents were not sufficiently pervasive or severe to alter the terms and conditions of their employment, the evidence proffered in this case is clearly sufficient to have the issue decided by a jury and, thus, summary judgment on the first prong of the hostile work environment claim is unwarranted.[4]

b. Evidence Regarding Vicarious Liability

Defendants contend that they are entitled to summary judgment because they cannot be held vicariously liable for any alleged harassment by Thomas Dodge employees towards plaintiffs. As set forth below, there are genuine issues of disputed fact on the vicarious liability issues that preclude summary judgment.[5]

i. Alleged Harassment by Cline

As noted *supra*, Thomas Dodge is vicariously liable for any alleged harassment by supervisor Cline unless it can show (1) that it exercised reasonable care to prevent or correct the harassment, or (2) Lafond and Cicciari unreasonably failed to take

---

inappropriate conduct in creating or maintaining this hostile work environment.

[4] In addition to alleging hostile work environment claims under Title VII, intervenor-plaintiffs allege a parallel state law claim under NYSHLR. Generally, claims of discrimination brought under New York state law are analyzed using the same framework as claims brought under Title VII, and the outcome under state law will be the same as the outcome under Title VII. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996). Thus, for the reasons stated *supra*, the Court denies defendants' motion for summary judgment with respect to the intervenor-plaintiffs' state law claims for hostile work environment. Discussion of the state law standard for vicarious liability in this context follows *infra*, in connection with the evidence on vicarious liability.

[5] Defendants correctly note that a claim of constructive discharge does not generally constitute a "tangible employment action" for purposes of the *Faragher/Ellerth* affirmative defense. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004) (resolving a Circuit split on this issue); *accord Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 294 (2d Cir. 1999). As set forth *supra*, a tangible employment action would result in a finding of vicarious liability on the part of Thomas Dodge *ipso facto*. *Mack*, 326 F.3d at 124; *accord Petrosino*, 385 F.3d at 225. The Court therefore focuses the analysis, with respect to Lafond and Cicciari, on the applicability of the *Faragher/Ellerth* defense. *See Suders*, 542 U.S. at 148-49. However, as discussed *infra*, even assuming that no tangible employment action occurred with respect to Cicciari and Lafond, the Court finds that genuine issues of material fact exist to preclude summary judgment on the vicarious liability issue, based on the *Faragher/Ellerth* affirmative defense. With respect to Denninger, defendants do not argue that the *Faragher/Ellerth* affirmative defense is available.

advantage of any preventive or corrective opportunities provided by Thomas Dodge. *Ellerth,* 524 U.S. at 745. There are disputed issues of material fact on these requirements that preclude summary judgment.

With respect to the first prong of the *Faragher/Ellerth* affirmative defense, "[a]lthough not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense." *Caridad,* 191 F.3d at 295. Defendants argue that Thomas Dodge had a "strict anti-discrimination policy prohibiting any form of sexual harassment, discrimination and/or retaliation in the workplace." (Defendants' Memorandum of Law, at 14.) Specifically, the policy provided that complaints of harassment should be reported by employees to his or her Department head and, upon receiving such complaint, an investigation would be conducted by the Human Resources Department and the report would be provided to Thomas Mammolito. Thus, defendants contend that, "[b]y establishing an effective sexual harassment policy and providing Lafond and Cicciari with a copy, Defendant Thomas Dodge Subaru unquestionably took reasonable steps to prevent and remedy improper conduct." (Defendants' Memorandum of Law, at 15.)

Plaintiffs argue that the policy was inadequate because it only directed employees to go to their Department Manager with complaints of harassment and did not provide alternative avenues of complaint. In addition, plaintiffs contend that there was no training on the policy, or on preventing or remedying sexual harassment.

(Pl.'s 56.1 ¶¶ 321-22.)

Defendants counter that, in addition to the written policy, there was an unwritten "open door" policy by Mammolito in which he allowed employees to freely meet with him to discuss any matter that they wished. (Def.'s 56.1 ¶¶ 69, 108.) Defendants note that Lafond and Cicciari did seek Mammolito's assistance for other personal issues and, thus, clearly knew of this "open door" policy.

Although the Court recognizes that summary judgment for the employer is appropriate in cases where the undisputed facts demonstrate that the employer unquestionably took reasonable steps to prevent and remedy harassment, this case is not one of them. A review of the record, including the above-referenced disputes regarding the adequacy of defendants' anti-discrimination policy, preclude summary judgment on this issue.

Similarly, summary judgment is unwarranted on the second prong of *Faragher/Ellerth* – namely, whether Lafond and Cicciari unreasonably failed to take advantage of any preventive or corrective opportunities provided by Thomas Dodge. Although defendants argue that summary judgment is appropriate because it is undisputed that Lafond and Cicciari did not complain to Mammolito about the alleged harassment by Cline (and/or Sessa) prior to September 13, 2005, plaintiffs have presented evidence that, before their September 13, 2005 complaint to Mammolito, Lafond and Cicciari complained to Cline who, as their Department Manager, was the person designated to receive complaints under the policy. (Pl.'s 56.1 ¶¶

317, 327, 333, 343.) Lafond states that she also complained to Mammolito about Cline's harassment before September 13, 2005. (Pl.'s 56.1 ¶¶ 153, 336, 342.) Lafond further asserts that she complained in 2005 to Rosanne Coppola, who had responsibility for the human resources functions at Thomas Dodge. (Pl.'s 56.1 ¶¶ 325, 340-41.) Finally, as noted *supra*, Lafond and Cicciari state that they together complained to Mammolito about Cline on September 13, 2005. (Pl.'s 56.1 ¶¶ 342-44, 455-46.)

According to plaintiffs, even after these various complaints to managers and Mammolito regarding Cline's harassment, including complaints made prior to September 13, 2005, Thomas Dodge did not discipline Cline and took no action to prevent or correct the harassment. Lafond claims that, after complaining to Mammolito, who told her to close her door, Cline prohibited Lafond from closing her door, became louder and more abusive, and continued to harass her without being disciplined. (Pl.'s 56.1 ¶¶ 342-44, 455-56.)

Given the disputed facts concerning whether defendants exercised reasonable care to prevent and promptly correct the sexually harassing behavior alleged against Cline, after being notified of such behavior by plaintiffs, summary judgment on this issue is also unwarranted.

ii. Alleged Harassment by Sessa

As noted *supra*, Thomas Dodge is vicariously liable for co-worker Sessa's alleged harassment if it knew or reasonably should have known about the harassment, but failed to take appropriate action to remedy the situation. *See Petrosino*, 385 F.3d at 225.

Defendants argue that Mammolito, as soon as he became aware on September 13, 2005 of the allegations of harassment by Sessa, took prompt remedial action by, among other things, (1) issuing a disciplinary notice to Sessa with a final warning that he would be terminated for any future inappropriate behavior, (2) reviewing the warning with Sessa and having him sign the notice, and (3) notifying Cline of the situation. According to defendants, "[t]he notice is critical because it evidences the Respondent's zero-tolerance policy concerning sexual harassment and Defendant's immediate response to Lafond & Cicciari's complaints." (Defendants' Memorandum of Law, at 30.) Defendants further note that Lafond admits "that Mammolito immediately disciplined Sessa upon learning of the complaint and made him apologize to Lafond." (*Id.*) Defendants also point to evidence that, on September 14, 2005, Mammolito convened a meeting of his managers in a conference room, told them there was a zero tolerance policy against sexual misconduct, and distributed a memo about the policy with paychecks on September 16, 2005 that they had to sign and return to management. (Def.'s 56.1 ¶¶ 192-200.)

However, plaintiffs dispute several aspects of defendants' response. First, plaintiffs assert that, long before complaining to Mammolito in September 2005, they had repeatedly complained to various supervisors about the harassment and that those supervisors did nothing and failed to advise Mammolito, as required under the policy. Specifically, Lafond and Cicciari claim to have repeatedly complained about Sessa to Cline, who had the responsibility to report the complaint to Mammolito. (Pl.'s 56.1 ¶¶ 99, 123-24, 144, 150-51, 314, 319, 367-68,

11

370-71, 373-75, 377, 379-81, 397, 402-04, 407, 409-10, 414, 417.) Moreover, there is evidence that (1) Christian Damm, another Department Manager, received complaints from Lafond and was aware of Sessa's harassment (Pl.'s 56.1 ¶¶ 509-12, 514-17), and (2) Lafond and Carole Scott, another employee, complained to Coppola, another Department Manager, about Sessa. (Pl.'s 56.1 ¶¶ 376, 502.) Plaintiffs contend that Cline, Coppola, and Damm, who were all Department Managers, did nothing and did not report the allegations to Mammolito. Although defendants argue that plaintiffs should have then gone to Mammolito, who they knew had an "open door" policy, the Second Circuit has noted:

> [T]he plaintiff's failure to report to other company personnel the incidents of harassment that she reported to [a supervisor] is irrelevant to the adequacy of [the employer's] response. [The employer] argues that a harassed plaintiff has other options under its policy because the misconduct may be reported not only to the employee's "department supervisor," but also to her "manager, Human Resources representative, or to the Corporate Equal Employment Opportunity Manager." Implicit in this argument is the notion that the plaintiff has an affirmative duty to bring her allegations to the company's attention in more than one way when she believes the company's response to her harassment claim is inadequate. We reject this attempt to shift the company's failure to respond onto the plaintiff's shoulders. When a plaintiff reports harassing misconduct in accordance with company policy, she is under no duty to report it a second time before the company is charged with knowledge of it.

*Distasio,* 157 F.3d at 65. Thus, there are disputed issues of fact related to the adequacy of defendants' response to plaintiffs' alleged complaints to supervisors prior to September 2005.

Second, plaintiffs point to evidence that the response in September 2005 also was inadequate. Plaintiffs contend that Mammolito referred to their complaints as "bulls**t." (Pl.'s 56.1 ¶¶ 102, 428.) Plaintiffs further assert that "[t]he memo handed out with employee's paychecks was inadequate because it did not provide any advice on how to complain, made no change in the insufficient complaint procedure in the handbook, and was not given to employees to keep." (Plaintiffs' Memorandum of Law, at 17.) Finally, plaintiffs contend that the harassment continued even after the warning and memo. For example, there is evidence that Sessa continued with his harassment, including making sexually explicit comments and jokes to Lafond and bullying Cicciari. (Pl.'s 56.1 ¶¶ 102, 214, 240, 443-45.) According to Cicciari, when she complained to Mammolito about Sessa's bullying, he told her to ignore him and go back to work. (Pl.'s 56.1 ¶¶ 102, 440.) Plaintiffs also cite to other evidence of continuing harassment that went unaddressed, including pornography on company computers. (Pl.'s 56.1 ¶¶ 478-90.)

Viewing this evidence in the light most favorable to plaintiffs, a rational jury could conclude that Thomas Dodge failed to take appropriate preventive or remedial action with respect to Sessa's harassment. And, as

discussed *supra*, summary judgment is unwarranted on the second prong of *Faragher/Ellerth* as well – namely, whether Lafond and Cicciari unreasonably failed to take advantage of any preventive or corrective opportunities provided by Thomas Dodge.[6] Accordingly, summary judgment on the hostile work environment claims are denied.[7]

## C. RETALIATION

### 1. Applicable Law

Title VII and the NYSHRL prohibit an employer from firing an employee in retaliation for having made a charge of discrimination. 42 U.S.C. § 2000e-3(a); N.Y. Exec. Law § 296(1)(e).[8] "Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward

---

[6] With respect to the second prong of the *Faragher/Ellerth* defense, the Court need not decide whether Lafond and Cicciari's failure to complain to Mammolito was driven by a reasonable fear of retaliation. (*See* Defendants' Memorandum of Law, at 16.) As discussed *supra*, there is evidence that Lafond and Cicciari did in fact complain to various Department Managers, and ultimately to Mammolito, and thus summary judgment is inappropriate on the issue of whether Lafond and Cicciari unreasonably failed to avail themselves of preventive and corrective opportunities provided by Thomas Dodge. In any event, plaintiffs have proffered evidence from which a reasonably jury could find that they did fear retaliation by Mammolito for their complaints, including evidence that Mammolito ignored multiple complaints about Sessa, who was also his son-in-law. *See Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001) (stating that the employee must show a "credible fear that her complaint would not be taken seriously or that she would suffer some adverse employment action as a result of filing a complaint") (quoting *Caridad*, 191 F.3d at 295).

[7] The Court notes that a higher standard may apply under NYSHRL for imputation of liability to the employer in the context of a hostile work environment claim. *See EEOC v. Rotary Corp.*, 297 F. Supp. 2d 643, 661 (N.D.N.Y. 2003); *see also Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 361 (S.D.N.Y. 2007) ("[C]ourts have applied a stricter standard under the state and local human rights laws with regard to the imputation of liability to an employer, requiring that the employer encourage, condone, or approve of the conduct . . . . This interpretation is rooted in *Totem Taxi v. State Human Rights Appeal Bd.*, 65 N.Y.2d 300, 305, 491 N.Y.S.2d 293, 480 N.E.2d 1075 (1985), and *Human Rights ex rel. Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687, 496 N.Y.S.2d 411, 487 N.E.2d 268 (1985), in which the New York Court of Appeals held that NYSHRL does not impose liability on employers absent a showing that the employer became a party to the discriminatory conduct."); *Heskin v. Insite Advertising, Inc.*, No. 03 Civ. 2598 (GBD) (AJP), 2005 WL 407646, at *23 (S.D.N.Y. Feb. 22, 2005) ("[A]n employer cannot be held liable . . . for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it.") (citations and internal quotation marks omitted). In any event, the Court finds that plaintiffs have set forth sufficient evidence to meet this heightened standard. Here, there are genuine issues of material fact as to whether Thomas Dodge "had knowledge of and acquiesced in, or subsequently condoned, the discriminatory conduct," *Rotary*, 297 F. Supp. at 661, for the reasons discussed *supra*.

[8] Retaliation claims under the NYSHRL, like hostile work environment claims, are generally governed by the same standards as federal claims under Title VII. *See Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

an employee, whether or not it was the sole cause.'" *Terry v. Ashcroft*, 336 F.3d 128, 140-41 (2d Cir. 2003) (internal citations omitted). To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) defendant was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 66 (2d Cir. 1998); *see Terry*, 336 F.3d at 141.

The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3; *see also Wimmer v. Suffolk Co. Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1991). Informal as well as formal complaints constitute protected activity. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Moreover, to establish that her activity is protected, a plaintiff "need not prove the merit of [her] underlying discrimination complaint, but only that [she] was acting under a good faith, reasonable belief that a violation existed." *Sumner*, 899 F.2d at 209; *see also Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989).

A plaintiff may present proof of causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or . . . (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).

Retaliation claims are governed by the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Again, to establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) defendant was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 66 (2d Cir. 1998). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). Although the burden that a plaintiff must meet at the *prima facie* stage is minimal, the plaintiff must at least proffer competent evidence of circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. *See Cronin v. Aetna Life Ins.*, 46 F.3d 196, 204 (2d Cir. 1995).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802)). If the defendant carries that burden, "the burden shifts back to the plaintiff 'to show that the reasons [proffered] by the defendant were not the defendant's true reasons, but rather a pretext for [retaliation].'" *Spector v. Bd. of Trustees of Comm. Tech Colleges*, No. 08 Civ. 0398, 2009 WL 693353, at *1 (2d Cir.

2009) (quoting *Taitt v. Chem. Bank*, 849 F.2d 775, 777 (2d Cir. 1988)).

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he or she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of retaliation. *See id.*; *Connell v. Consolidated Edison Co. of N.Y.*, *Inc*., 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly [retaliation]." 233 F.3d at 157; *see Lapsley v. Columbia Univ.*, 999 F. Supp. 506, 513-16 (S.D.N.Y. 1998) (advocating elimination of *McDonnell Douglas* test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

2. Application

The Court finds that plaintiff EEOC, with respect to Denninger, has made out the *prima facie* case required by *McDonnell Douglas*. There is evidence that defendants were aware of Denninger's protected activity in the form of complaining about sexual harassment, her discharge was close in time to such complaints, and there is other evidence (discussed *infra*) that satisfy the *prima facie* standard. Having found that plaintiff has met its *prima facie* case, the Court proceeds to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find retaliation. Defendant has articulated a legitimate, nondiscriminatory reason for terminating Denninger, contending that Denninger was discharged because of alleged poor sales.

Notwithstanding defendants' nondiscriminatory reason for discharging Denninger, defendants' motion for summary judgment as to Denninger's retaliation claim is denied. In particular, plaintiff offers several forms of evidence to support the retaliation claim. First, it disputes defendants' contention that Denninger had poor performance in selling cars given the circumstances. (Pl.'s 56.1 ¶¶ 268, 271, 278, 280-81 286-87, 527-28, 530-540, 543.) Second, Denninger points to a male employee, Raymond Montefusco, who had sales performance issues in April and May 2005, but was not discharged. (Pl.'s 56.1 ¶¶ 269, 271, 274, 278-80, 307, 544, 579-81.) Although defendants argue that Montefusco

was inexperienced and thus his sales cannot be compared to Denninger, the Court concludes that, drawing all reasonable inferences in Denninger's favor, a jury could conclude that Montesfusco was similarly situated to Denninger. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an *identically* situated employee."). Third, plaintiff points to the warning she testified was given by her direct supervisor not to push her complaints and the statement by Mammolito to Rodriguez – in the context of allegedly derogatory statements about Denninger two weeks before Denninger was fired – that Denninger "won't be around for long." (Pl.'s 56.1 ¶¶ 555-56, 571-72, 576.) Finally, Denninger points to the close proximity between Denninger's complaints, the threats to fire her, and her discharge – which all occurred in a span of several weeks. *See Cioffi v. Averill Park Cent. Scho. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("[T]he lapse of only several months after the letter and several weeks after the press conference between the protected speech and the adverse employment action is sufficient to support an allegation of a causal connection strong enough to survive summary judgment.").

The Court recognizes that the fact that an employee disagrees with an employer's reasons for termination, or even has evidence that the decision was objectively incorrect, does not demonstrate, by itself, that the employer's proffered reasons are a pretext for termination. *See, e.g., Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 761 (8th Cir. 1998) (stating that "the relevant inquiry was whether [plaintiff] created a genuine issue of material fact as to whether her discharge was gender-based and not whether her termination was reasonable" and noting that "[i]t is not the task of this court to determine whether [the investigator's] investigation was sufficiently thorough or fair"). Similarly, the Court recognizes that temporal proximity, by itself, does not permit a plaintiff to overcome a defendant's non-discriminatory reason for termination. *See, e.g., Chamberlain v. Principi*, 247 Fed. Appx. 251, 2007 WL 2692339, at *2 (2d Cir. Sept. 12, 2007). However, in the instant case, Denninger does not simply rely on temporal proximity or factual disputes about her performance to rebut the proffered reason for termination, but rather relies on such evidence in combination with other evidence, including the above-referenced comments made at the time of her complaints and the allegedly disparate treatment of similarly-situated employees. In short, after having carefully examined the evidence contained in the record, the Court concludes that, when viewed as a whole and in the light most favorable to plaintiff, the evidence creates genuine issues of material fact as to whether defendants' stated reasons for terminating Denninger were pretextual, and whether her protected activity was a factor in the termination decision. Accordingly, summary judgment on the retaliation claim is denied.[9]

---

[9] Defendants also seek summary judgment on the intervenor-plaintiffs' retaliation claim under NYSHLR. (Defendants' Memorandum in Further Support, at 1.) However, in this case, the Court finds the intervenor-plaintiffs' federal and state retaliation claims to warrant a trial. Defendants argue that no "adverse employment action" can be shown here, where only constructive discharge is at issue. However, the only case that they point to, *Croswell v. Triborough Bridge & Tunnel Auth.*, No. 03 Civ. 2990 (NRB), 2007 U.S. Dist. LEXIS 58343, at *36 (E.D.N.Y. Aug. 7, 2007), does not

16

stand for this proposition and proceeded to "address the incidents that plaintiff alleges created an 'intolerable work atmosphere' individually below in connection with our discussion of her retaliation claim." The Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from and broader than the standard in the Title VII discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). In particular, "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id*. at 69. Thus, the Court declines to grant summary judgment dismissing these claims, given that there exist disputed issues of material fact regarding the elements of Lafond's and Cicciari's retaliation claims, including whether or not defendants' alleged actions resulting in the intervenor-plaintiffs' constructive discharges constituted adverse employment actions that are actionable under Title VII and NYSHRL. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608-09 (2d Cir. 2006) (considering retaliatory constructive discharge claim); *see also Cioffi v. N.Y. Comm. Bank*, 465 F. Supp. 2d 202, 207-12 (E.D.N.Y. 2006) (upholding jury verdict on retaliation claim based on constructive discharge); *Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429, 441 (S.D.N.Y. 2008) (denying summary judgment on retaliation claim based on constructive discharge); *Whitner v. Emory Univ.*, No. 1:06 Civ. 1518 (TWT), 2008 WL 4224407, at *22 (N.D. Ga. Sept. 12, 2008) (considering whether the "same facts discussed in connection with [plaintiff's] constructive discharge claim" constitute a "material adverse employment action" for purposes of Title VII retaliation claim); *Heilman v. Memeo*, No. 304 Civ. 00683 (LRH) (VPC), 2008 WL 2669294, *7 (D.Nev. Jun 27, 2008) ("constructive discharge is only one type of adverse action."). Moreover, intervenor-plaintiffs' claims may proceed under

## C. NEW YORK EXECUTIVE LAW § 296(6)

Defendants further argue that summary judgment should be granted with respect to the intervenor-plaintiffs' fifth cause of action against the individual defendants for aiding, abetting, inciting, compelling and/or coercing sexual harassment, in violation of Section 296(6) of the New York Executive Law. The Court disagrees.

Section 296(6) states that it is unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so." N.Y. Exec. Law § 296(6). In *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542 (N.Y. 1984), the

---

*Richardson v. N.Y. Dep't of Corr. Servs.*, 180 F.3d 426, 444 (2d Cir. 1999), *abrogated on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), where the Second Circuit held that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy [that prong] of the retaliation *prima facie* case," for the reasons discussed *supra* in connection with the hostile work environment claims. *Id.* at 446; *see also Nugent v. The St. Luke's/Roosevelt Hosp. Ctr.*, No. 05 Civ. 5109 (JCF), 2007 WL 1149979, at *13 (considering both a retaliatory hostile work environment claim and a retaliatory constructive discharge claim); *McWhite v. N.Y. City Housing Auth.*, No. 05 Civ. 0991 (NG) (LB), 2008 WL 1699446, at *11 (E.D.N.Y. Apr. 10, 2008) (applying *Richardson* to a retaliatory hostile work environment claim); *Brown v. N.Y. State Dep't of Corr. Servs.*, 583 F. Supp. 2d 404, 421-22 (W.D.N.Y. 2008) (denying summary judgment on Title VII retaliation claim in part on plaintiff's co-workers' alleged retaliatory acts and citing *Richardson*).

New York Court of Appeals held than an employee may not be sued individually under this section "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Id*.

However, the Second Circuit distinguished *Patrowich* in cases where a defendant actually participates in the conduct giving rise to a discrimination claim, stating that such a defendant may be held personally liable under the statute. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington*, 524 U.S. at 754, and *Faragher*, 524 U.S. at 807; *accord Steadman v. Sinclair*, 223 A.D.2d 392, 393 (N.Y. App. Div. 1996) ("Defendant's counterclaims . . . seeking to hold plaintiffs individually liable as aiders and abettors of such retaliation under Executive Law § 296 (6), have support in our recent case law holding that 'an individual may be held liable for aiding discriminatory conduct'") (quoting *Peck v. Sony Music Corp.*, 221 A.D.2d 157, 158 (N.Y. App. Div. 1995) and citing *Tomka*, 66 F.3d at 1317); *Peck v. Sony Music Corp.*, 221 A.D.2d at 158 ("Executive Law § 296 (6) and (7) provide that an individual may be held liable for aiding and abetting discriminatory conduct. [*Patrowich v Chemical Bank*] is not a bar to maintenance of the action."). *But see Trovato v. Air Express Int'l*, 238 A.D.2d 333, 334 (N.Y. App. Div. 1997). This Court must follow Second Circuit precedent and apply *Tomka*. *See, e.g., Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 425 (E.D.N.Y. 2008); *Huaman v. Am. Airlines, Inc.*, No. 00-CV-6336 (FB) (MDG), 2005 WL 2413189, at *4 (E.D.N.Y. Sept. 29, 2005); *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1161 (E.D.N.Y. 2003); *Hasbrouck v. Bankamerica Housing Services, Inc.*, 105 F. Supp. 2d 31, 39 (N.D.N.Y. 2003); *McCoy v. City of N.Y.*, 131 F. Supp. 2d 363, 371 (E.D.N.Y. 2001); *Turner v. Olympic Reg'l Dev. Auth.*, 89 F. Supp. 2d 241, 243 (N.D.N.Y. 2000); *Arena v. Agip USA Inc.,* No. 95 Civ. 1529 (WHP), 2000 WL 264312, at *3 (S.D.N.Y. Mar. 8, 2000). Accordingly, because there is sufficient evidence that the individual defendants personally participated in the discriminatory conduct to support an aiding-and-abetting theory of individual liability under the NYSHRL, the Court denies defendants' summary judgment motion with respect to this cause of action.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 25, 2009
Central Islip, New York

* * *

The attorney for plaintiff EEOC is Konrad Batog, Esq., of the Equal Employment Opportunity Commission, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004. The attorney for intervenor-plaintiffs is Scott Michael Mishkin, Esq., of Scott Michael Mishkin,

P.C., One Suffolk Square, Suite 240, Islandia, New York 11749. The attorneys for defendants are Perry S. Heidecker, Esq., and Michael J. Mauro, Esq., of Milman Labuda Law Group PLLC, 3000 Marcus Ave., Suite 3W3, Lake Success, NY 11042.